UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION



FILED
APR 2 0 2002
DISTRICT COURT
N DISTRICT OF MO

| | |
|---|---|
| DIAMOND AND JEWELRY BROKERS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:01CV236 CDP<br>) |
| ADT SECURITY SYSTEMS, INC., and JOHN DOE, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Defendant ADT Security Services, Inc., provided an alarm system and monitoring services to plaintiff Diamond and Jewelry Brokers, Inc. When the alarm registered that Diamond's telephone service was interrupted, ADT's workers took no action. As a result, the thieves who had cut the phones lines made off with $450,000 worth of merchandise. Diamond sued ADT, alleging "gross negligence." ADT moves for summary judgment, because the contract says it is not an insurer and cannot be held liable for damages resulting from its own negligence.

I agree with ADT that the contract provision is enforceable and properly excludes liability for negligence. Whether ADT's actions in this case constituted gross negligence, however, is a fact question, and should be decided by the trier of

fact, not on summary judgment. I will therefore deny the summary judgment motion.

## I. Facts and Background

On October 20, 1999, Diamond and ADT entered into a Commercial Sales Proposal/Agreement. ADT agreed to upgrade Diamond's burglar alarm with a digital communicator for $810 annually. ADT agreed to provide plaintiff with security alarm systems and services, including monitoring plaintiff's premises for theft. Diamond's president signed the agreement, and Diamond apparently paid all its fees as required.

About a year later, on October 29, 2000, someone severed the telephone lines leading to Diamond's store. At 9:31 p.m. that night the burglar alarm system transmitted a signal to ADT's office. This signal is referred to as a "No Response CU signal." The signal arrived on the computer screen of Nicolas Guess, an employee of ADT, at ADT's Kansas City facility. Guess did not take any action with regard to this signal. After nothing was done with the signal, it was rerouted and appeared on the screen of Gracie Webb, another ADT employee. This signal appeared at 10:18 p.m. The signal remained on Webb's computer screen for four to five minutes, after which Webb cleared the signal from her screen without taking further action. The thieves then entered the store without the alarm being activated, and made off with several hundred thousand dollars of merchandise.

Paragraph E of the parties' agreement provides, in part:

> E. IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR OVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES. . . .

## II. Standards for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleading but must, by affidavit or other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). In determining summary judgment, the facts and the inferences therefrom are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, courts do not weigh the evidence and decide the truth of the matter, but rather determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249. Rule 56(c) mandates the entry of summary judgment against a party, if after adequate time for discovery, that party fails to make a showing sufficient to establish the existence of an essential element of the case that the party will have the burden of proving at trial. Celotex, 477 U.S. at 322-23.

## III. Discussion

ADT argues that the contract exculpates it from any liability for loss suffered by plaintiff. Furthermore, ADT asserts that the parties agreed plaintiff

would look exclusively to its insurer to recover for injuries or damages, placing the allocation of risk upon plaintiff to obtain insurance. ADT also argues that Missouri law does not recognize a claim for gross negligence, and that even if it did the undisputed facts here would show that its actions did not rise to the level of gross negligence.

The Supreme Court of Missouri analyzed exculpatory clauses in contracts most recently in Purcell Tire & Rubber Co., Inc. v. Executive Beech craft, Inc., 59 S.W.3d 505 (Mo. en banc 2001). In Purcell the Court held that exculpatory clauses are not per se against public policy in Missouri. In analyzing such a clause, the court looks at the parties involved, the relationship between the parties and the conspicuousness of the clause itself.

> Sophisticated parties have freedom of contract–even to make a bad bargain, or to relinquish fundamental rights. Sophisticated parties may contractually limit future remedies. For example, commercial entities at arm's length may waive the right to a jury trial, or agree to forum selection (unless unfair or unreasonable).
> [Plaintiff] emphasizes that courts closely scrutinize tort-liability limitations, because our traditional notions of justice are so fault-based that most people might not expect them to be altered. Clear, unambiguous, unmistakable, and conspicuous limitations of negligence liability do not violate public policy. The contract must effectively notify a party that he or she is releasing the other party from its own negligence.

Id., at 509. (Internal citations and quotations omitted).

Purcell, of course, did not consider a clause attempting to exculpate a party from future intentional torts. It has long been the law of Missouri that "one may never exonerate oneself from future liability for intentional torts or for gross negligence." See Alack v. Vic Tanny International, 923 S.W.2d 330, 337 (Mo. 1996); Lewis v. Snow Creek, Inc., 6 S.W.3d 388, 394 (Mo. Ct. App. 2000).

Here the undisputed evidence shows that this clause is enforceable to the extent it exculpates ADT from liability for ordinary negligence. The parties are both businesses who negotiated at arm's length, and the clause specifically refers to negligence and the consequences of failures in the alarm system or its monitoring. The liability limitation is clear, unambiguous, and unmistakable. It is conspicuous in that it is emphatically set forth in capital letters. This clause clearly denotes the parties' intent to limit ADT's liability.

Plaintiff argues that it did not read the entire agreement, that the agreement was in the form of a "sales proposal" and that the exculpatory clause is on the reverse side, therefore issues of fact exist as to the enforceability of the clause. The undisputed facts, however, establish that the clause is enforceable under Purcell Tire. The agreement specifically directs the "customer's" (plaintiff's) attention to "the warranty, limit of liability and other conditions on reverse side" Furthermore, plaintiff had previously entered into a similar type of contract, which contained a very similar exculpatory clause, with another alarm company in 1992.

(See, Exhibit D to Defendant's Motion for Summary Judgment). Prior to the burglary, the parties were acting under the terms of the agreement as set forth in the signed "sales proposal." Based on these undisputed facts, I find that the exculpatory clause of the parties is enforceable to limit defendant's liability for ordinary negligence.

This finding does not, however, end my inquiry, since a party may not limit future liability for intentional torts. See Alack, 923 S.W.2d at 334; Lewis, 6 S.W.3d at 394; see also Sasco, Inc. v. Wells Fargo Alarm Services, Inc., 969 F.Supp. 535, 540 (E.D. Mo. 1997).

Diamond alleges that ADT's actions in monitoring the system, including its reliance on newly hired or insufficiently trained employees, shows gross negligence. Whether Missouri law recognizes a separate cause of action called "gross negligence" is not dispositive of this issue. This is a negligence case where Diamond cannot recover if ADT's conduct was simply ordinary negligence. Diamond can recover, however, if ADT's conduct rose to the level of gross negligence. See Sasco Inc. v. Wells Fargo Alarm Services, 969 F.Supp. 535, 540 (E.D. Mo. 1997).

ADT argues that as a matter of law it was not grossly negligent. Diamond argues that ADT's conduct was reckless and taken in knowing disregard of the consequences. Both parties have submitted evidence to support their respective

positions, and I believe that this is a factual determination that cannot be made on the summary judgment record before me. Whether defendant's actions and/or inactions rise to a level of "gross negligence" or were committed recklessly or with wanton disregard of duty remains a genuine issue of material fact to be determined by the trier of fact. Defendant is therefore not entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [# 28 ] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of April, 2002.

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE FOLLOWING INDIVIDUALS ON 04/29/02 by ldreon
4:01cv236     Diamond & Jewelry vs ADT Security

28:1441 Petition For Removal--Other Contract

| | |
|---|---|
| Charles Fraenkel - | Fax: 312-368-4562 |
| Gary Growe -   9255 | Fax: 314-863-9388 |
| Eric Schmitt -  102010 | Fax: 314-863-9388 |
| Joseph Swift -  4512 | Fax: 314-421-3128 |

SCANNED & FAXED BY:
APR 29 2002
C. D. D.